13.30.32 Ronald Coal Co v. Director of Office of Workers' Compensation Programs, U.S. Department of Labor, Isaac Walters. Oral argument not to exceed 15 minutes per side. Mr. Solomons for the petition. Good morning. I'd like to reserve two minutes. How much? Two. All right. This is a black loan claim, an appeal brought by the employer and the insurance carrier that raises a question of whether the administrative law judge treated a regulatory preamble in the Federal Register as if it had the force and effect of law and thus decided the case on a basis which is impermissible. There isn't any doubt that under this court's decision in Annie Coal Company, but maybe more importantly, under three very powerful Supreme Court decisions in Wyeth, Mead and Christensen v. Harris County, that the use of a regulatory preamble as a source of criteria for the adjudication of anything that is not, that is if the preamble is not published for notice and comment in accordance with the requirements of the Administrative Procedure Act, is impermissible. I want to point out... Doesn't that depend upon how the preamble is used? I mean, not that it sets forth an immutable legal standard, but if it simply indicates a way of weighing the evidence, hasn't it been found acceptable in that way in some cases? Well, yeah, it's been found acceptable by this court. As a matter of fact, in cases where the court held that the administrative law judge consulted it, but didn't rely on it. That's not a conclusion you can reach in this case. Well, when you said I couldn't rely on it, that might be a bit of an overstatement. What about this GE Coal Company case from our circuit? Wouldn't that tend to support the use of the preamble the way it was used in this case? I believe not, Your Honor. The reason not, it's not, is that in this case, the administrative law judge relied on nothing but the preamble for reaching every single conclusion that she reached. And she didn't rely on... And this is worse than the situation that was presented in A&E. Well, wait a minute now. She did discuss the evidence. She discussed the expert witness reports and the expert witness opinions. So I don't know if you could say everything was decided based on the preamble alone. Well, Your Honor, on page 7 of our reply brief and in pages 71 through 80 of the appendix, we talk about... The appendix is her opinion. Each time there was a question presented by the evidence, she turned to the preamble and said, but because of the preamble, I reject this opinion or I accept this opinion because it's consistent or not consistent. But let me say there's one thing about this case which is beyond that... Let me ask by way of clarification. Are you talking about her statements during the proceedings or are you talking about her decision? Her opinion. Her opinion. And on page 7 of the reply brief, I mean, she... I don't want to go through all of this, but I'm going to to some degree. But let me just throw in one additional factor. Her references to the preamble misstated. The material in the preamble doesn't state anything that is particularly supportive of what this administrative law judge said. As a matter of fact, if you go to the documents relied upon by the Department of Labor in the preamble, principally the National Institute of Occupational Safety and Health criteria document, in that document, which the Department of Labor relies on all over the place, and we don't have any problem with that, that's a fine document, that refutes the interpretation of the preamble that this administrative law judge made. And let me prove that to you. Because I think there isn't any doubt about it. And I think, you know... I'm having a little trouble following your argument. You know, the administrative law judge has an extensive opinion discussing the evidence. And what we're trying to decide here is whether there's substantial evidence to justify her findings. And there's an abundance of evidence put forward and discussed in the decision in order of awarding benefits. Your Honor... Are you sure you're not overly emphasizing this argument about the preamble? The only thing she relies on is the consistency or lack thereof with the preamble, and she misstates it. She misstates what the preamble says. And this isn't even supported by substantial evidence. Because under this Court's decision in Director v. Roe, Williams v. Eastover Mining, this Court holds, and she relies on two medical reports, the reports of Dr. Arderwall and Amicetti. And those don't meet the standard in this Court for substantial evidence. Because those are opinions that give a bottom line with no explanation at all. But it's not a substantial evidence matter. The thing is that the case is not. When you have a question of law, whether she relies on the preamble is a question of law. It's an illegal reliance. And so it is a question of law. And you don't reach, whatever everybody says, this Court as well, you can't reach a substantial evidence discussion until you have gotten past the question of whether she broke the law in the way she decided the case. And we say that she did it. We also say it's not supported by substantial evidence, because in this particular instance it clearly is. But let me just say that... Well, you know, she's got all this evidence and medical evidence, and I know there are conflicting doctors' medical opinions, but she's got expert testimony and takes into account his history as a cigarette smoker and all that, and comes to the conclusion that he's totally disabled due to pneumoconiosis and from the number of years working in the hospital and all that. What about all that evidence? Are you not planning to address that evidence? I address every single word of it, and we do address it in brief and prepare it again. We address every word of it, prepare to address it. Well, I'm talking about in your argument this morning. Are you not... Well, what she does... Your Honor, we can't both talk at the same time. Are you intending not to discuss that medical evidence in your argument this morning? Your entire argument that this claimant can't prevail because of the preamble, is that really what your argument is? Is that going to be your entire argument this morning? Well, it wasn't. I said also that the decision was not supported by substantial evidence. I mean, an administrative law judge, and a lot of them do this, they write a 75-page opinion, blah, blah, lots of evidence, but what counts is her rationale for the resolution of conflicting evidence. What we argue secondarily is that the evidence she relies on, which are these two reports by Agarwal and Amazetti, are not substantial evidence because they don't provide any information. All they are is a conclusion that doesn't have any justification by medical rationale or citation to medical authority or anything. What I'm saying on the preamble is, what she relies on is the principal reasons for resolving conflicts in the evidence. And there was no testimony from the claimant's doctors. They just wrote your standard reports. There was some testimony by an employer's doctors, but the thing is that an employer's doctors are said, and supported it with citation to medical authority, that there are three reasons why it was clear to them, and they're all highly qualified pulmonary specialists, that this man's condition was caused by smoking exclusively, not by his mining. And they mentioned that he had an asthma that was reversible. He mentioned that his FEV1-FEC ratio was consistent with smoking, but not with mining. And also, that the miner's emphysema, he also had lung cancer, but nobody's claiming that that was related. His emphysema was of a type called Bullis emphysema, which is unrelated to mining. Now the interesting thing is, nothing in the preamble refutes that. And the administrative law judge at every place, and I'm looking at her opinion in appendix at 75, 78, 77, she rejected Dr. Jarbo's discussion of the type of emphysema that he had on page 79-80, and the materials in the preamble doesn't support her at all. The preamble says nothing about any of that, except to the extent that it relies on NIOSH reports that support everything that these doctors said. So this is a made-up decision. How many doctors did she rely on for her conclusion? Well, she relied on Agarwal and Amasetti, who were the claimants' experts. So she relied on the, and didn't rely on your experts? Well, she discredited them for reasons that have come out of her head, not from even the preamble, not from science, from nothing. But Dr. King, didn't he say that there's proven evidence of anthracosis, which is consistent with the coal miners' pneumococcus? No one's disputing that. His anthracosis, anthracosis is not a disease, but he did have, there was a pathology done after his lung cancer surgery, and he had, and this is not an issue in his case, really, he had such minimal effect by coal dust, according to the pathology expert, that it wouldn't have had any effect on his situation at all. And that was accepted. Nobody was really arguing about that. The question is whether the condition, which was serious, was caused by smoking, or was caused by mining, and perhaps mining and smoking. Or both. Or both, right. That was a pathology report, wasn't it, in 2001? I'm not sure of the date, but it was Dr. Osterling, yes. That was in 2001. Minimal or very mild clinical pneumococcus. And the thing is that if we're stuck with this preamble, and if the ALJs have the authority to say, well, I'm going to rely on it, they don't even explain it. In all of her 75 pages, she never says what there is in this preamble that supports her decisions. And every single decision she makes is referenced with respect to something in the preamble. Not with respect to the reasoning or documentation of the doctor, but with respect to something in the preamble. And she gets it all wrong, never explains what it was. What she really thought was that the coal mining, he engaged in coal mining for how many years? 14, I believe. That his coal mining experience exacerbated his lung situation and produced, according to her view, pneumoconiosis, right? She cited the doctor who said that. The doctor didn't explain it, and I don't know what it means. What does it mean to exacerbate? To make it worse. Well, right. And how does that happen when the man's been out of the mines for 20 years? We don't know how exactly. We're not biologists up here. I understand. We don't know exactly how the molecular structure of the lungs works. But what I believe you are. So we have to base it on expert testimony. That's the reason for expert testimony. Right. But what I believe you are supposed to do is to hold that expert testimony to some legal standard of reasonability and reliability. And that was not done here. And as a matter of fact, every single reference of hers to the preamble is wrong. Didn't they talk to some extent about what they concluded from their examination of the lungs? Your Honor, I welcome you to read the opinions of Amicetti and Agarwal. And you will see that they're nothing but a bottom line. They don't give any explanation. Don't cite any authority. It's just a standard kind of report that you see in these cases with no explanation that's accepted. And it really isn't even documented. And as a matter of fact, none of them answer the points that are made by the pulmonary specialists about why it was smoking, why it was exclusively smoking. And these things are not even arguable. Bullets emphysema is not due to mining, period. NIOSH found that. This FEV1-FEC ratio, if I may finish, situation and how you measure it and what it shows, it's not arguable. It's in the NIOSH materials. It's in the federal government materials. She made it all up. And that's what we're trying to deal with here. We see this in other cases, too. Please don't give these administrative law judges license to just do whatever they want without having some documentation from someplace that supports what they're doing. Thank you, counsel. May it please the court, my name is Joe Wolf, and I represent the claimant in this case. And we take issue with Mr. Solomon's and his argument here today. And specifically, we think that this is a case that, of course, has been decided by the judge in a very extensive opinion. One of the longest I think I have ever seen. It's been affirmed and upheld by the Benefits Review Board, which, as this court knows, is very critical of the law judges and their opinions. It's here before this court on an argument that Mr. Solomon's, quite frankly, has cherry-picked one sentence from the summary of the doctor but not gone into detail on the underlying examination. It's not just one sentence, but it's a number. The doctors have filled out the form that's recommended and used by the Department of Labor in their standard exam and gone into detail. All these doctors, Dr. Baker, Dr. Agrawal, Dr. Amosetti, have laid their hands on this claimant and felt. The old doctors could feel the lungs, feel the breathing. How many experts do you say support the findings and conclusions? Well, in black lung cases, the judges pointed out in these cases and in their brief, a judge can find certain parts of a decision, can support a client and be reasoned, others not. All the judges support the conclusion that this man is totally disabled, including their doctors. Their doctors have found that he had pneumoconiosis, or black lung, from the biopsy, which is the gold standard. I mean, the x-rays just show something's consistent with black lung, but the biopsy is what it is. It's where they take a slide, take the tissue from the lung, put it on a slide and look at it. And actually, it's kind of interesting, the silicosis is determined by, it looks like little stars coming through the light with polarization on the slide. But it was, in fact, found to be black lung. So all the doctors, in one way or another, the judges, it sort of reminds me of putting together a quilt. You know, the judge finds this and finds that. And in this case, all the stars aligned. All these things came together. And the support of the judge is just, I mean, what she relied on wasn't just one sentence from these doctors. But if you look at the reports, the entire report, including their, to think about how much time it would take to fill out the form. And, you know, doctors like to check things off. But these doctors went into detail on his breathing, on his percussion, on all the other aspects of a physical exam. And even Dr. Rosenberg. What about the discussion of the causation issue? Well, of course, you have the 10-year presumption that if you have black lung and you have more than 10 years, that you have a certain presumption. But the judge and the doctors, and especially as Judge Stafford pointed out, the family doctor who saw his reports from the biopsy and treated him, determined that it came from coal mine employment. But I think all these reports do reflect that both his disability and his pneumoconiosis arose out of coal mine employment. In part. We don't have to show. In fact, I don't think there would be a single coal miner getting black lung if, in fact, they had to show that their disability arose in total from coal mine employment. But just in part. And, of course, the reliance on, of course, as we've pointed out in the brief, the specific issues here, the objection to the preamble, which the judge did not rely on as the sole reason for her decision. She consulted him, which has been approved by this court and cases in other circuits. It's in those. No court has said they couldn't rely on them or consult them. And I think that's exactly what was done here. And it's quite a record to support that. We think that here is an individual who's now 78. His birthday was September the 6th, 1935. And he was born in the middle of the Depression and worked. Of course, as many people in eastern Kentucky had only a fourth grade education, could barely read and write, and had difficulty with his smoking history and his work history. But he did work enough in jobs that withheld and reported their Social Security to where the judge did find. And then I think it's stipulated eventually by all parties that he had at least 14 years of coal mine employment. And even if you read the report of Dr. Rosenberg and particularly the deposition, Dr. Rosenberg said this man worked in the worst of the worst. He was the continuous miner operator that— It was an underground coal mine. A big part of it was underground coal mining. I think that actually the 14 years was underground coal mine employment. And then he had some surface mining as well. But they have to sit on a 30- or 40-ton machine that actually goes up and has a spinning head that cuts into the rock and into the coal. And all that comes back on the miner operator. And I think Dr. Rosenberg conceded this is the worst job in the mines. So I think in this case, we just simply ask that the court uphold the decision. And we feel that there is substantial evidence to support the judge's decision. You know, in doing these cases over a period of time—I've been doing them 38 years—you see some parallels. I know that I often think of this case and some of these other cases being similar to the point by Robert Frost called A Tuft of Flowers. That's where this fellow went out in 1909 and cut hay with a scythe. And you know what a scythe is. And a fellow followed him. And I guess he got to wondering where they were in the world. And he said, well, we work together on these cases or on these issues. We don't see each other, but we rely on each other. And I think that's what the district director did. I think that's what the doctor did, the initial Department of Labor doctor. And that's what the administrative law judge did. And that's what the BRB did. And I think this court can rely on that evidence. It's more than substantial. And we would simply ask that you all uphold the administrative law judge. If there's no more questions. All right. Thank you. Thank you. Mr. Wolf's discussion of the biopsy doesn't have anything to do with this case. The 10-year presumption has nothing to do with this case. Nothing to do with this case? No, it doesn't. It's not applicable. Why is that? Because it isn't. Because it's not. He doesn't. This case is based on legal pneumoconiosis. There's no presumption for that. And I'd also like to point out about these great opinions that the administrative law judge relied upon on Appendix 98, Appendix page 100. I welcome you to look at those. This doctor, they just say he's got pneumoconiosis that caused it. That wouldn't go in a civil litigation. It wouldn't go anyplace. It would be totally inadequate evidence. And it ought to be here, too. Because it doesn't meet this court's criteria in your decisions in Roe and Williams v. Eastover. But, you know, another thing here that's really incredibly troubling, you know, this administrative law judge and a few others, you know, they believe that it is appropriate to have this massive transfer of liability and responsibility. Who are they? This judge. This judge. Others like her. This ALJ. That there ought to be this massive transfer of liability and responsibility for smoking to coal companies. This is not only unfair. It's unjustified by any kind of science. This judge said, and I quote, I quote to you from this judge. Well, did this guy work 14 years in underground coal mines? Yes. A lot of people do and don't get sick. And a lot of people do and don't smoke. So I don't think that's really kind of where we ought to go. That's irrelevant that he worked 14 years? Well, it's not irrelevant. I mean, if he'd worked no years, then he wouldn't be here. But, you know, the thing is here. Let me just read you a quote from the administrative law judge. This is contrary to the department's findings, which reject the notion that a lung impairment caused by smoking is distinct from that caused by mining. It's in Appendix 7879, Cites Federal Register Provision. That's a lie. That's not true. I don't have the context for that. What is this that she's referring to? I'm sorry. I kind of missed your focus. Well, that is taken from out of context. It started off by saying this is contrary to something. Oh, so it's the – all right. She's talking about Dr. Jarbo's report where he's distinguishing, by medical grounds, coal dust cause effects from cigarette smoking cause effects. Okay. That's good to know. We'd have to have the context for that statement. Well, that is the context. And what the ALJ says is contrary to the department's findings, which reject the notion that a lung impairment caused by smoking is distinct from that caused by coal dust exposure. The department made no such finding. There's no such finding. As a matter of fact, it's not true. It is just plain wrong. And, you know, for us to be bound by that, they have to pay benefits in this case, and you're going to get a chance to decide this case. And so we're going to have to do it in lots of cases when, in fact, the science is very clear, undeniable, that experts can make a distinction, and they do make distinctions, and the distinctions are valid, and they did it in this case, and they're supported by the NIOSH criteria documents, by the government. So all we've got here is a kind of wishful thinking here, and I know everybody wants to give benefits to these claimants, but the fact of the matter is that giving them benefits for smoking and making us pay for it is not justice, in my opinion. All right. Thank you. Case is submitted.